469 So.2d 298 (1985)
STATE of Louisiana, Appellee,
v.
David R. HARRIMAN, Appellant.
No. 16871-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*300 Smith & Hingle by J. Randolph Smith, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, James Norris, Dist. Atty., Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
Defendant, David R. Harriman, was indicted by a Ouachita Parish grand jury for the first degree murder and armed robbery of Kevin Chapin, an attendant at the Racetrac Gasoline Station in West Monroe. The *301 defendant was subsequently charged by an amended indictment with the offense of second degree murder, in violation of LSA-R.S. 14:30.1. In State v. Harriman, 434 So.2d 551 (La.App. 2d Cir.1983) cert. denied, 440 So.2d 729 (La.1983), this court reviewed the trial court's judgment denying defendant's motion to suppress evidence and affirmed that judgment. A Ouachita Parish jury subsequently found the defendant guilty of second degree murder. The trial court sentenced the defendant to life imprisonment without benefit of parole, probation or suspension of sentence. Finding no merit to defendant's assignments of error on appeal, we affirm.

FACTS
On May 11, 1982, Kevin Chapin, an attendant at the Racetrac Gasoline Station on Thomas Road in West Monroe was the victim of an armed robbery and homicide. The incident was reported by James Futch, who had stopped at the station. Futch told the police that at approximately 2:00 a.m., he saw a white male wearing a white short sleeved shirt at the counter inside the station. Futch observed someone whom he believed to be the attendant lying on the floor of the station. Futch reported that he saw the suspect enter a gold colored vehicle, leave the station, and travel south along the Thomas Road overpass over Interstate 20.
Several minutes after receiving this information, West Monroe police officers arrived at the gasoline station. As one of the officers arrived at the station, he observed a man matching the description provided by Futch, exit the west side of the station, enter a gold Chevrolet, and leave the scene. The officer wrote down the license number of the car and the defendant was stopped shortly thereafter in this vehicle.
The defendant was advised of his rights and informed that he was a suspect in this investigation. The defendant was transported to the West Monroe Police Department where a routine search was performed and $225.00 was taken from the defendant's person. It was later learned that approximately $235.00 was missing from the station. The defendant was taken to an interrogation room where he was formally placed under arrest for armed robbery and first degree murder. The defendant at this time executed a written waiver of his constitutional rights.
During the interrogation, the defendant stated that he had stopped at the gas station for gasoline and had seen the attendant lying on the floor. He stated he did not wish to get involved and was in the process of leaving when he was observed by the West Monroe Police Officer. The defendant denied being at the scene five minutes earlier. At this time, the defendant invoked his right to counsel and the interrogation was terminated.
Later that same morning, Futch, the witness who had first seen the defendant leaving the gasoline station, identified the defendant in a lineup.
On the afternoon after the defendant's arrest, Corporal Via and Sergeant Fewell of the Ouachita Parish Sheriff's Department, on special assignment to the Ouachita Parish Homicide Task Force, had the defendant placed in an interview room to interrogate him about unrelated homicides which the Task Force was investigating. According to the officers, during this interview the defendant asked to see the officers investigating the offense for which he was being held. Sergeant Norris of the West Monroe Police Department was called and entered the interrogation room with Corporal Via and Sergeant Fewell. The defendant was again advised of his constitutional rights. It was during this interview that the defendant implicated himself in the murder of the attendant at the Racetrac Gasoline Station. Additionally, during this interview, the defendant advised the officers of the location of the murder weapon, a .38 caliber pistol. At trial, the defendant was found guilty, as charged, of second degree murder.

ASSIGNMENTS OF ERROR
1. The trial court erred in failing to suppress oral inculpatory statements *302 and/or confessions allegedly made by defendant to law enforcement personnel on the 11th day of May, 1982 and in allowing the introduction of such statements into evidence at trial.
2. The trial court erred in allowing into evidence at trial Exhibit S-31.
3. The trial court erred in failing to suppress for use as evidence at trial and/or in allowing introduction into evidence at trial of any and all items of physical evidence seized as a result of defendant's oral and culpatory statements and/or confessions, including but not necessarily limited to Exhibits S-19, S-21A and S-21B.
4. The trial court erred in admitting into evidence at trial Exhibits S-21A and S-21B when no foundation was laid for their admissibility and no chain of custody was established.
5. The trial court erred in failing to suppress the results of any lineup or any identification process and in allowing into evidence Exhibit S-4.
6. The trial court erred in allowing the introduction into evidence Exhibit S-1.
7. The trial court erred in allowing the introduction into evidence of Exhibits S-12 and S-13.
8. The trial court erred in qualifying State witness Larry Norris as an expert in fingerprint identification and in allowing him to make observations as to the reasons why defendant's fingerprints may not be (were not) found at the scene of the crime.
9. The trial court erred in allowing into evidence Exhibit S-17.
10. The trial court erred in failing to grant defendant's motion for mistrial during the testimony of State witness, Jack Spears, when the Assistant District Attorney made prejudicial remarks and comments on the evidence in the presence of the jury.
11. The trial court erred in allowing the introduction into evidence of Exhibit S-3.
12. The trial court erred in qualifying State witness, Steve McKinney, as an expert in firearms identification and/or ballistics and in allowing the witness to testify regarding his observations and findings in the absence of photographs confirming the results of his testing procedures.
13. The trial court erred by failing to grant defendant's motion for mistrial made during the prosecution's rebuttal closing argument.
14. The trial court erred in including in its general charge examples of circumstantial evidence.
15. The trial court erred in failing to grant defendant's motion for new trial and motion for post verdict judgment of acquittal.
16. The jury erred in finding defendant guilty of second degree murder in that the evidence when viewed in the light most favorable to the prosecution does not support such a verdict.

ASSIGNMENTS OF ERROR NOS. 1, 2 and 3
By these assignments, it is contended that the trial court erred in failing to suppress oral inculpatory statements made by the defendant on the date of his arrest and erred in failing to suppress all items of physical evidence seized as a result of the defendant's oral inculpatory statements. This court previously addressed these issues in the defendant's application for supervisory review of the trial court's ruling. We now adhere to our earlier decision, found in State v. Harriman, supra, and find that these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 4, 9 and 11
By these assignments, the defendant contends that the trial court erred in allowing into evidence a .38 caliber pistol (Exhibit S-19), a live round and spent casing (Exhibit S-21A), a test bullet and casing (Exhibit S-21B), cash found on the defendant (Exhibit S-17), and a bullet removed from the body of the decedent (Exhibit S-3), because a proper foundation had not been established by a proper chain of custody.
*303 Identification of an item of evidence establishes a proper foundation for its admission into evidence. Identification can either be visual, as by a witness who identified the evidence in court, or by a chain of custody. State v. Demouchet, 353 So.2d 1025 (La.1977); State v. Russell, 434 So.2d 460 (La.App. 2d Cir.1983) cert. denied, 438 So.2d 1112 (La.1983). It suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to the admissibility. State v. Taylor, 422 So.2d 109 (La.1982), U.S. cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983); State v. Downing, 451 So.2d 1221 (La.App. 2d Cir. 1984).
The pistol, a .38 caliber derringer, a cartridge, and a spent casing were found by Jimmy Self, a state highway employee who was mowing the median of the westbound lane of Interstate 20. Police officers were led to the area where Mr. Self found the items from statements made by the defendant. On the day of the defendant's arrest, West Monroe police officers retrieved the items from Mr. Self. Susan Rutledge, a criminologist for the North Louisiana Crime Lab, testified that she received the pistol, the cartridge, and the spent casing on May 17, 1982 from Officer Larry Norris. Ms. Rutledge testified that upon receiving the evidence she placed it in the evidence locker at the North Louisiana Crime Lab where it remained locked up. Ms. Rutledge assigned the evidence a number and identified that number at trial.
Linda Armstrong, an employee of the North Louisiana Crime Lab, testified that she received the pistol, the cartridge, the spent casing, and the bullet on June 15, 1982 from Raymond Cooper, an employee of the crime lab. There is a gap in the chain of custody from May 18 until June 15, 1982. However, both Ms. Armstrong and Ms. Rutledge identified the objects at trial as the same objects that they placed in the evidence locker at the laboratory. Finally, Ms. Armstrong testified that she released the items of evidence to Officer Norris on September 27, 1982 for use at the defendant's trial.
Captain Davis of the West Monroe Police Department testified that upon arresting the defendant and patting him down, the Captain found $225.00 in cash in the defendant's left front shirt pocket. Davis testified that he placed the cash in a property envelope, sealed it and initialed the envelope and turned it over to Officer Norris. At trial, Officer Norris testified that the envelope containing the cash was indeed the one received from Captain Davis. Officer Norris further testified the cash had been in the evidence vault until it was removed for the trial. At trial, Captain Davis positively identified the cash and the envelope as that which he obtained from the defendant.
We find that the foundation laid establishes that it is more probable than not that the objects are connected with defendant's case and are in fact the items found by Larry Self and Captain Davis on the day of the defendant's arrest. The testimony of the witnesses positively identified each item of evidence offered. Therefore, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant contends that the results of a post arrest lineup were improperly admitted into evidence because the defendant was deprived of his constitutional right to counsel during the lineup and that the lineup was unduly suggestive, denying defendant due process of law.
At approximately 5:00 a.m. on the morning of the defendant's arrest, a lineup was conducted. The lineup consisted of the defendant and four other white males. James Futch viewed the lineup and identified the defendant as the man whom he had seen at the Racetrac Gasoline Station at the approximate time of the offense.
The defendant contends that he had secured the services of an attorney and had requested that the attorney be present during *304 the lineup. However, the record of the hearing on the motion to suppress does not show this to be the case. Officer Larry Norris testified at the hearing that the defendant did not ask for a lawyer prior to the lineup. Norris stated that the defendant requested an attorney only during the initial questioning and the questioning terminated at that point. Captain Smith of the West Monroe Police Department testified that he received a call from the defendant's first attorney, Paul Henry Kidd, at approximately 9:00 a.m., some four hours after the lineup. Captain Smith testified that no attorney had called prior to the lineup. Additionally, both Officer Norris and Captain Smith testified that the defendant in no way objected to the lineup. Mr. Kidd did not testify at the hearing.
Due process does not require the presence of counsel at a pre-indictment lineup. State v. Russell, 416 So.2d 1283 (La.1982) U.S. cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982); State v. Stewart, 389 So.2d 1321 (La.1980). Defense counsel stipulated that the lineup was conducted prior to the indictment of the defendant. Both Officer Norris and Captain Smith testified the defendant did not request counsel prior to the lineup.
In State v. Thomas, 406 So.2d 1325 (La.1981) the Supreme Court held that even if a defendant's statutory right to counsel was violated by conducting a lineup without the presence of counsel despite the defendant's specific request therefore, the exclusion of the lineup is not required where the lineup was conducted according to fair and standard police procedure and there was no bad faith effort to circumvent the defendant's statutory right to counsel following the arrest. Here, there is no indication that the police acted contrary to their regular procedure or that there was bad faith on the part of the officers involved. The record supports the finding that the defendant had not requested the presence of counsel at the lineup and the defendant had no constitutional or statutory right to have counsel present at the lineup.
Defendant contends that even if it is found that his right to counsel was not violated, the lineup was so impermissibly suggestive that it resulted in a denial of due process of law. A lineup is considered to be suggestive if the pictures or persons used in the lineup display the defendant so singularly that the witness's attention is unduly focused upon him. State v. Guillot, 353 So.2d 1005 (La.1977); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983); State v. White, 446 So.2d 1317 (La.App. 2d Cir.1984) cert. denied, 450 So.2d 957 (La. 1984).
Defendant contends that only one of the five men in the lineup resembled the defendant making the lineup unduly suggestive. However, our examination of the photograph taken of the lineup does not indicate the lineup was suggestive. All five men were of the same race, were similar in appearance and stature, and were all dressed in identical uniforms. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment, the defendant contends that the trial court erred in allowing into evidence Exhibit S-1, the adult protocol of the examination of the victim by Dr. Frank Chin, Assistant Coronor. Defendant contends that the document was improperly admitted because the document was a duplicate and not the original.
Where there is a mechanical reproduction of an original document, its admission over objection is reversible only if the content of the copy does not accurately reflect that of the original. State v. Square, 433 So.2d 104 (La.1983); State v. Demouchet, 353 So.2d 1025 (La.1977); State v. Stuart, 344 So.2d 1006 (La.1977).
Dr. Chin testified that the document was his work product which he prepared as a result of his findings from the autopsy. The defendant does not contend that the duplicate does not accurately reflect that of the original. Therefore, this assignment of error is without merit.

*305 ASSIGNMENT OF ERROR NO. 7
By this assignment, the defendant contends that two photographs of the victim at the crime scene were improperly admitted into evidence in that their prejudicial effect outweighed any probative value.
It is well settled that a ruling admitting gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. It is equally well settled that postmortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing cause of death, and to provide positive identification of the victim. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Tonubbee, 420 So.2d 126 (La.1982) U.S. cert. denied, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983).
The photographs in the present case depict the victim lying on the floor of the service station with a gunshot wound to the forehead. These pictures showed the location and nature of the wounds sustained by the victim. We find that the pictures in the present case were not unduly gruesome and that the probative value of the photographs outweighed any prejudicial effect they might have had upon the jury. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
By this assignment, the defendant contends that in light of the State's discovery response, the defense was prevented from preparing a proper and effective cross examination of Officer Larry Norris, the State's fingerprint expert.
Officer Larry Norris testified that a counter top at the Racetrac Gasoline Station was dusted for fingerprints and that there were no identifiable latent fingerprints found at the scene. The defendant objected to such testimony alleging that the State failed, in a motion for discovery, to inform him of any fingerprint analysis or fingerprint test analysis conducted in this case. In the State's answer to the defendant's motion for discovery, the State indicated that it would allow defense counsel to inspect, copy, etc., results of scientific tests or examinations made in this case which are discoverable under the Code of Criminal Procedure.
LSA-C.Cr.P. Arts. 718 and 719 refer to documents and other tangible objects and to reports of examinations and tests respectively. These articles only require that the defendant be allowed to inspect, copy or photograph those documents or reports that are in the control of the State. State v. Hooks, 421 So.2d 880 (La.1982). These articles do not require the State to give an itemized list of all the evidence in its possession and how each was obtained. State v. Landry, 384 So.2d 786 (La.1980).
The defendant does not indicate that he attempted to obtain the results of the fingerprint test or that he was in any manner prevented from obtaining that information. The evidence in the present case merely indicates Officer Norris found no identifiable fingerprints at the scene of the murder. Such evidence does not implicate the defendant in the crime or provide exculpatory evidence. Rather, it is merely testimony which reflects the lack of evidence implicating defendant. Therefore, we find no error by the trial court in admitting this testimony into evidence and find that this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 10 and 13
By these assignments, the defendant contends that a comment made by the prosecutor during the trial and during the State's rebuttal closing argument warranted a mistrial.
The first comment came during an objection made by defense counsel to the State's questioning of Jack Spears. Spears is the manager of a department store where the defendant allegedly purchased the .38 caliber pistol used to murder the victim. The State was attempting to introduce a box that such a gun would be packaged in and *306 defense counsel objected on the basis that the inquiry was too general and vague. When the defendant made the objection, the prosecutor stated "they obviously don't want me to get this out, Your Honor, so they are going to object to everything." At this point, defense counsel moved for a mistrial and the jury was dismissed from the courtroom. After argument of counsel, the court denied defendant's motion for mistrial but agreed to give an admonition to correct the situation.
The second comment occurred during the State's rebuttal closing argument when the prosecutor stated:
Are you going to let him go? You must find him guilty. It's beyond a reasonable doubt, and bear in mind how close he came to getting away with this. If James Futch had not been there when he was, Mr. Harriman had been long gone. Don't put him out on the street to learn from his mistake.
At this point defense counsel objected and entered a motion for a mistrial. The trial court denied defendant's motion. However, the judge admonished the jury by stating:
(t)hat the arguments of counsel are simply their thoughts and their ideas on what each of them seek. I will give you the law which you must apply to this case as to the facts as you have perceived them as coming from the witness stand, but then you are to make a fair and impartial and unbiased decision as to what the verdict should be in this case, and I will read to you the only three verdicts that you can give in this case.
Under LSA-C.Cr.P. Art. 775, a mistrial should be ordered when prejudicial conduct inside the courtroom makes it impossible for a defendant to receive a fair trial. When a remark unduly prejudices a defendant, the trial court may admonish the jury to disregard the remark or comment or may grant the mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. Additionally, a prosecutor should avoid remarks predicting societal costs and consequences of a not guilty verdict. State v. Barrow, 410 So.2d 1070 (La.1982). A verdict will be overturned on the basis of improper argument if the reviewing court is firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Messer, 408 So.2d 1354 (La.1982); State v. Carthan, 377 So.2d 308 (La.1979). However, mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. State v. Smith, 430 So.2d 31 (La.1983); State v. Governor, 331 So.2d 443 (La.1976). The determination of whether prejudice has resulted lies within the sound discretion of the trial court. State v. Smith, supra; State v. Haynes, 339 So.2d 328 (La.1976).
We do not find that the comments made by the prosecutor were so prejudicial that it made it impossible for the defendant to obtain a fair trial. The trial court correctly admonished the jury. This action was sufficient and a mistrial was not warranted. Therefore, we find that these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 12
By this assignment, the defendant contends that he was denied his right of confrontation because the State's expert witness in ballistics and firearms, Steve McKinney, did not present photographs of his examination of the bullets.
Steve McKinney was qualified at trial to give expert testimony in firearms identification. McKinney examined and tested the pistol which was believed to be used to kill the attendant at the Racetrac Gasoline Station. McKinney testified that a test bullet he fired from this weapon was fired from the same pistol as the bullet found in the body of the attendant. Defendant contends he was denied the right to effective cross examination of Steve McKinney since McKinney did not produce photographs of the bullets from which he made his comparison in this case.
*307 The Sixth Amendment to the United States Constitution and Article 1 Section 16 of the Louisiana Constitution of 1974 guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The purpose of the confrontation clause is to provide the defendant with the opportunity to challenge the testimony introduced by the State against the accused at trial by means of cross examination of the declarant of the testimony. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Where the declarant whose testimony the State wishes to introduce is present at trial, gives his sworn testimony at trial, and is subject to cross examination by the defense, as happened in the present case, the confrontation clause is satisfied. Ohio v. Roberts, supra; Martin v. Blackburn, 521 F.Supp. 685 (E.D.La.1981).
In this case, defense counsel was not limited in his cross examination of Steve McKinney. The fact that the witness did not photograph the results of his test went to the weight of that evidence. There is nothing to indicate that the defendant was prevented from testing or photographing the pistol and bullets himself. In this case, the confrontation clause did not require the State to provide photographic evidence of the test. The defendant could have produced his own ballistic or firearms expert to controvert the testimony of the State's expert. Additionally, there is nothing to indicate that defendant was prevented from obtaining the results of the test performed by McKinney by means of discovery. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 14
By this assignment, the defendant contends that the trial court erred in including in its general charge examples of circumstantial evidence. The defendant contends that the examples of circumstantial evidence resulted in uncertainty and confusion.
A jury charge must be considered as a whole. A conviction will not be reversed on the grounds of erroneous instructions, unless a disputed portion, when viewed in light of the entire charge, is erroneous and prejudicial. State v. West, 419 So.2d 868 (La.1982); State v. Sanders, 431 So.2d 833 (La.App. 2d Cir.1983) cert. denied, 439 So.2d 1076 (La.1983).
Our review of the entire jury instruction reveals that it adequately defined the distinction between direct and circumstantial evidence and that the examples given by the trial court were neither erroneous nor prejudicial. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 15 and 16
By these assignments, the defendant contends that the trial court erred in failing to grant defendant's motion for a post verdict judgment of acquittal on the basis that the evidence when viewed in the light most favorable to the prosecution does not support the conviction. Specifically, the defendant contends that the circumstantial evidence presented by the State does not reflect that the defendant had the specific intent to kill or to inflict great bodily harm. Secondly, the defendant contends that the State's evidence fails to prove that the defendant committed an armed robbery when the death of the victim occurred.
The standard of appellate review in cases involving both direct and circumstantial evidence has been set forth by our Supreme Court in State v. Wright, 445 So.2d 1198 (La.1984) as follows:
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Where circumstantial evidence is used to prove commission of the offense, La.R.S. 15:438 mandates that: "assuming that *308 every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
This court has recognized that R.S. 15:438 is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Austin, 399 So.2d 158 (La.1981) Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. La.R.S. 15:438 provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. As we stated in State v. Chism, 436 So.2d 464 (La.1983) La.R.S. 15:438 `may not establish a stricter standard of review than the more general reasonable jurors' reasonable doubt formula, but it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.'
See also State v. Daley, 463 So.2d 826 (La.App. 2d Cir.1985).
The defendant was found guilty as charged of second degree murder. Under LSA-R.S. 14:30.1 second degree murder is defined as follows:
Second degree murder is the killing of a human being:
(1) when the offender has a specific intent to kill or to inflict great bodily harm; or
(2) when the offender is engaged in the perpetration or attempted perpetration of... armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
The State provided substantial evidence indicating the defendant's guilt of the crime. James Futch, an unbiased witness, saw the defendant leaving the gasoline station when he found the attendant lying in a pool of blood on the floor of the service station. The defendant was again seen at the service station by a West Monroe Police Officer. On the day of the defendant's arrest, the defendant confessed to committing the crime to police officers and directed police officers to a .38 caliber pistol found on the median of Interstate 20 near the crime scene. The expert testimony at trial established that the pistol which was found was the same weapon which fired the bullet which killed the attendant. The defendant was found to have in his possession $225.00 in cash and approximately $235.00 was missing from the Racetrac Service Station.
Viewing the evidence in the light most favorable to the prosecution, the jury could conclude that the defendant committed second degree murder under either paragraph (1) or (2) of LSA-R.S. 14:30.1.
We find from this evidence that a rational trier of fact could conclude that the defendant had the specific intent to kill the attendant. The jury could have reasonably concluded that by shooting the attendant with a .38 caliber pistol between the eyes from a close range the defendant actively desired and intended to kill or inflict great bodily harm upon the attendant. Additionally, the defendant was found to have approximately the same amount of cash in his pocket that was missing from the service station. Thus, the jury could have reasonably concluded that the defendant, while armed with the .38 caliber pistol, robbed the attendant and that the killing occurred during the perpetration of this armed robbery. Therefore, we conclude that the evidence was clearly sufficient for the jury to conclude, beyond a reasonable doubt, that the defendant was guilty of the crime of second degree murder. These assignments of error are without merit.

*309 DECREE
Finding no merit to defendant's assignments of error, the defendant's conviction and sentence is affirmed.