550 So.2d 847 (1989)
STATE of Louisiana, Appellee,
v.
Danny Ray LAMBERT, Appellant.
No. 20868-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
*848 Indigent Defender Office by Ford E. Stinson, Jr., Benton, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry Brown, Dist. Atty., James M. Bullers, Asst. Dist. Atty., Bossier City, for appellee.
Before FRED W. JONES, JR., SEXTON and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Danny Ray Lambert, was charged by indictment with two counts of aggravated burglary, violations of LSA-R.S. 14:60, and one count each of aggravated rape and aggravated crime against nature, as denounced by LSA-R.S. 14:42 and LSA-R.S. 14:89.1. One of the counts of aggravated burglary was severed and, following a jury trial, defendant was convicted of the remaining three counts as charged. For the aggravated rape, he received the mandatory sentence of life in prison without benefit of probation, parole, or suspension of sentence. A hard labor sentence of 30 years was imposed for the aggravated burglary and, for the aggravated crime against nature, defendant was given 15 years without benefit of probation, parole or suspension of sentence.
Urging six assignments of error, defendant now appeals. We affirm the convictions and sentences.

FACTS
On July 31, 1987, defendant escaped from the Texas Department of Corrections where he was serving a life sentence for rape. Three days later, at about 7:30 a.m. on August 3, 1987, he entered an apartment in Bossier City, searching for a change of clothes. Once inside he encountered a woman lying on a bed. Armed with a screwdriver, he pinned her down on the bed and placed his hand over her mouth. However, one of the apartment's male occupants confronted defendant, causing him to flee the residence in a gray 1982 Buick Regal. Upon the incident being reported, police authorities determined the vehicle had been stolen in Longview, Texas.
Later the same morning, at approximately 10:40 a.m., defendant, then wearing a gray shirt over his face, followed two young boys and their 15-year-old female babysitter into a private residence. One of the boys immediately secluded himself in a bathroom, and defendant quickly locked the other into a closet. While holding a box cutter razor to her face and threatening her, defendant forced the young girl to disrobe and then inquired whether she was a virgin. Upon the victim revealing that she was, defendant told her that he would only "kiss her down there." However, after performing oral sex and while still armed with the razor, defendant raped her. He then took some loose change and a watch before forcing the young girl into a closet on his way out of the residence. Defendant had removed the gray shirt *849 from his face soon after entering the house.
At 11:10 a.m., the Bossier City Police spotted a vehicle matching the description provided by the residents of the apartment first burglarized. Defendant was taken into custody and transported to the station, after his rights were read to him. The police officers next received a report of the rape and defendant's possible involvement. That afternoon, and following more extensive investigation, defendant gave inculpatory statements to the police regarding both episodes.

Assignment of Error No. 1
Defendant argues that the trial court erred in failing to suppress his statements and confession given to police, as indicated, shortly after his arrest. In particular, he pleads that his cooperation was obtained by promises of psychiatric help and lenient treatment. Further, he contends that he was denied food, sleep and a bath, and his request for an attorney, ignored. Defendant also maintains that the recorder was stopped during the course of his taped statements so that he could be guided in what to say.
Before a confession can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements, or promises. LSA-C.Cr.P. Art. 703(D); LSA-R.S. 15:451; State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984), writ denied, 446 So.2d 315 (La.1984); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir. 1983). If a statement or confession was elicited during custodial interrogation, the state must also show that the defendant was advised of his constitutional rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983), rehearing denied, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983). Once a defendant alleges specific instances of police misconduct in reference to the statement, the state must specifically rebut each instance. State v. Neslo, 433 So.2d 73 (La. 1983); State v. Massey, 535 So.2d 1135 (La.App. 2d Cir.1988).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession, being made by one who saw the witnesses and heard them testify, will not be overturned on appeal unless they are not supported by the evidence. State v. Beck, supra. In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion but may also consider pertinent evidence given at the trial. State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Beals, 410 So.2d 745 (La.1982).
Detective John Jeter of the Bossier City Police Department testified that, at 11:10 a.m. on August 3, he and another officer forced defendant to stop in the stolen automobile being driven by him at a shopping center. Defendant was then advised of his rights, and he acknowledged his identity. He was thereafter transported to police headquarters for questioning regarding only the apartment burglary.
Upon beginning at the station to again detail defendant's rights to him in preparation for questioning, Det. Jeter received information concerning the second crime and defendant's possible connection thereto. He then stopped his questioning of defendant and left to investigate the reported rape.
At 2:50 p.m., approximately three to four hours later, Det. Jeter returned to the station. After once more being advised of his Miranda rights, defendant indicated his understanding of them. He also signed a card from which Det. Jeter had read the rights. Defendant then gave an oral statement and, following that, agreed to make taped statements concerning both incidents.
Det. Jeter testified that before making any recorded statements defendant once again was advised of his rights. Indeed, the transcripts of the recordings reflect *850 such a warning on each occasion. Quite importantly, Det. Jeter testified that no threats, inducements, or promises were used to coerce defendant's statements, which the officer characterized as free and voluntary. Finally, Det. Jeter stated that, to his knowledge, no one else attempted to question defendant during the investigation.
Defendant testified at the hearing on his motion to suppress, recounting the previously listed instances of police misconduct as being attributable to Det. Jeter and a Detective George West. Det. Jeter was then called back in rebuttal, and he specifically contradicted defendant's allegations of official improprieties. He emphatically stated that the tape recorder was stopped at no time during defendant's statement. Further, defendant did not request an attorney at any point during the interrogation, and no offers of lenient treatment of any kind were extended. Likewise, no promise of psychiatric help was given to defendant, Det. Jeter realizing himself to be incapable of delivering such assistance.
The state, prior to the hearing being unaware of defendant's complaints regarding Det. West, asked the court to leave the record open so that West might be summoned to testify. That request was denied; however, Det. West was called at trial, providing additional evidence concerning the inculpatory statements. He stated that his only contact with defendant, which lasted just a few minutes, was in rendering assistance when defendant changed into a jail uniform on the day of arrest, a fact also testified to by Det. Jeter. Det. West unequivocally asserted that no threats or promises to induce defendant's testimony were made by him or in his presence.
Considering the officers' testimony, the nature of Det. West's fleeting contact with defendant would allow little time or opportunity for law enforcement overreaching. That fact, coupled with denial of misconduct, provided a strong refutation of defendant's claims. Based on the entire record, we also note that any lack of food or sleep experienced by defendant stemmed from his totally self-inflicted three day ordeal in avoiding the authorities after escaping from the Texas prison. The state cannot be held accountable for such discomforts so as to invalidate otherwise voluntary confessions. State v. Broadway, supra.
To credit testimony of a police officer over that of the defendant is not an abuse of discretion by the trial court. See State v. Neslo, supra. The total record supports the conclusion that defendant's statements were freely and voluntarily given and that the state rebutted the allegations of misconduct. Accordingly, this assignment of error lacks merit.

Assignment of Error No. 2
In this assignment, defendant contends that the trial court erred in failing to grant his motion to quash in that it was highly prejudicial and duplicitous for him to be prosecuted, at one trial, for aggravated burglary, aggravated rape, and aggravated crime against nature. As previously mentioned, the first count of the indictment, concerning the apartment burglary, was severed.
Duplicity is the charging of more than one distinct crime in one count of an indictment. State v. Mills, 505 So.2d 933 (La. App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987). The record reveals, however, that each count of the instant indictment charged indeed only one distinct crime. Hence, defendant's claim of duplicity clearly is not well founded.
LSA-C.Cr.P. Art. 493 provides:
Two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are based on the same act or transaction ... provided that the offenses joined must be triable by the same mode of trial.
In the present case, the three offenses joined were part of the same transaction. The punishment for each is necessarily confinement at hard labor, LSA-R.S. 14:42, 14:60, 14:89.1; and, consequently, each is triable by the same mode of trial, namely, a twelve member jury with at least ten jurors concurring to render a verdict, LSA-C. *851 Cr.P. Art. 782. Thus, the offenses were properly joined.
Severance of properly joined offenses is governed by LSA-C.Cr.P. Art. 495.1, which contains the following language:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
Inasmuch as the crimes tried were part of a continuous transaction, evidence of each would have been admissible at trial as part of the res gestae. LSA-R.S. 15:447, 15:448 (both now repealed). Thus, joinder of the offenses did not spawn the possibility of prejudice; and the critical issue became whether, in view of the number of offenses charged and complexity of the evidence to be offered, the trier of fact could distinguish the evidence and apply the law intelligently to each offense. State v. Carter, 412 So.2d 540 (La.1982).
Defendant here was only tried for three offenses, and the elements of each were lucidly and distinctly explained by the judge to the jury. We are thus convinced that the jury was able to properly evaluate the evidence and apply the law. Compare State v. Mills, supra. The trial court, then, did not err in denying the motion to quash.

Assignment of Error No. 3
Defendant contends that the trial judge erred in accepting Dr. Allen Cox, who performed the rape examination on the victim, as an expert and in allowing his opinion testimony.
The test of the competency of an expert is his knowledge of a subject about which he is called upon to express an opinion. LSA-R.S. 15:466 (now repealed). The competence of a witness to testify as an expert is a question of fact within the sound discretion of the trial judge, and his rulings on this subject will not be disturbed unless clearly wrong. State v. Ruple, 437 So.2d 873 (La.App. 2d Cir.1983). No rule of law, statutory or jurisprudential, requires that different standards be placed on those witnesses seeking to be qualified as an expert in a field for the first time. Not only special training but also experience can qualify an individual as an expert on certain matters. State v. Smith, 448 So.2d 778 (La.App. 2d Cir.1984).
Dr. Cox, a Board certified family practitioner, testified that he received a medical degree from the Louisiana State University Medical Center in Shreveport and completed a three year residency in Lake Charles. During his residency, Dr. Cox received a year of instruction in obstetrics and gynecology, and he performed rape examinations as a part of his training. Since 1983, Dr. Cox had been in private practice in Bossier City; he and his associates had performed all the rape examinations in Bossier Parish; and he had performed, according to his estimation, approximately 75 such examinations as a licensed physician.
While Dr. Cox had never before given live, in-court testimony during a rape trial, his education, training and experience disclose that the trial court did not commit error in accepting him as an expert in the field of medical practice and rape examinations. Accordingly, this assignment of error lacks merit.

Assignment of Error No. 4
In this assignment, it is argued that the trial court committed reversible error in admitting into evidence a sample of the victim's blood, hairs taken from her head, and fingernail scrapings from her left and right hands, all obtained as part of Dr. Cox's rape examination. Defendant contends that a proper foundation was not provided in that the person who collected the samples did not testify at trial and identify the items.
Before evidence is admissible, a proper foundation must be laid. LSA-C.Cr.P. Art. 773. Identification of an item of evidence establishes a proper foundation, and such identification can either be visual, as by a witness who identifies the evidence in court, or by a chain of custody. State v. Harriman, 469 So.2d 298 (La.App. 2d Cir. 1985), writ denied, 474 So.2d 1304 (La. *852 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986). The testimony as a whole need only establish that it is more probable than not that the object whose introduction is sought is the same as the object connected with the case. State v. Stewart, 530 So.2d 1263 (La.App. 2d Cir.1988). A lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to the admissibility. State v. Harriman, supra.
Concerning the sample of the victim's blood, Dr. Cox testified that he did not actually draw the blood himself, but the hospital laboratory did so at his direction. He stated that the exhibit was, in fact, the blood sample taken from the victim. The doctor also identified hair pulled from the head of the victim and fingernail scrapings from her left and right hands, all apparently physically taken by other individuals. Although the victim indicated to Dr. Cox that she did not scratch her assailant, he ordered the scrapings as a matter of practice. In addition to identifying the various items, the doctor testified that the tangible results of his rape examination were placed in a box given to Det. Jeter.
As the foregoing demonstrates, the exhibits emanated from Dr. Cox's examination of the victim, and were all taken on the same day and at the same facility. Such facts, coupled with Dr. Cox's identification, indicates that the disputed items, more probably than not, came from the victim.
Moreover, even if the objects were found to be improperly admitted, such an error could not be said to affect substantial rights of the accused and warrant reversal. LSA-C.Cr.P. Art. 921. The record reveals that defendant's guilt was overwhelmingly established by other evidence. Actually, the head hairs and fingernail scrapings were never used in any manner to connect defendant to the offense.

Assignment of Error No. 5
Defendant asserts that the evidence, when viewed in the light most favorable to the state, does not reasonably permit a finding of guilty of aggravated crime against nature. More specifically, he contends that his performing oral sex on the victim did not involve the "use of the genital organ of one of the offenders."[1]
In State v. Phillips, 365 So.2d 1304, 1305-1306 (La.1978), cert. denied, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979), our Supreme Court stated:
The statutory terms defining the crime as `unnatural carnal copulation' involving the `use of the genital organ of one of the offenders' have acquired historically and jurisprudentially a definite meaning. As between human beings, it refers only to two specified sexual practices: sodomy (anal-genital intercourse of a specified nature, see below) and oral-genital activity (whereby the mouth of one of the participants is joined with the sexual organ of the other participant).
(Emphasis added).
Because of this pronouncement, other courts have consistently held that oral sexual *853 encounters are forbidden by the statute. For example, in State in Interest of Claiborne, 535 So.2d 37, 39 (La.App. 4th Cir.1988), the court stated, "It is well settled in Louisiana caselaw interpreting the crimes against nature statute that oral sex is proscribed by the statute...." Furthermore, as in State v. Phillips, supra, the term "offender" in the statute has been read on other occasions as "participant." See State v. Frentz, 354 So.2d 1007 (La. 1978), and State v. Neal, 500 So.2d 374 (La.1987). Finally, we note that in State v. Bland, 419 So.2d 1227 (La.1982), the male defendant performed oral sex on a non-consenting 12-year-old female, and his conviction for aggravated crime against nature was affirmed.
Thus, in light of the foregoing discussion, it is evident that certain key terms defining the offense have acquired a settled meaning. Defendant's performance of oral sex on the victim, then, clearly falls within the prohibitions of the statute as clarified by the jurisprudence.
Additionally, to the extent that defendant contends the evidence does not satisfy the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), his argument is also unavailing. The victim unequivocally stated that defendant placed his tongue on her vagina. A victim's testimony alone can establish the elements of the offense of aggravated crime against nature. State v. Robinson, 491 So.2d 451 (La.App. 1st Cir.1986).
Accordingly, this assignment of error lacks merit.

Assignment of Error No. 6
While acknowledging that the sentence given for aggravated rape is mandatory, defendant complains that the maximum permissible sentences imposed for aggravated burglary and aggravated crime against nature are excessive. We disagree.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that cognizance was taken of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). Articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981).
Secondly, we must determine whether the sentence is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering thereby violating LSA-Const. Art. 1, § 20 (1974). State v. Bonanno, 384 So.2d 355 (La.1980).
The record discloses that the trial court, aided by a presentence investigation, quite adequately considered both defendant's background and the facts of the instant offense, all in accordance with LSA-C.Cr.P. Art. 894.1. Defendant, presently age 30 and an admitted heavy drug user, was in 1973, after completing the tenth grade, expelled from school because of his inability to accept a racially integrated student body. Subsequently in 1976, he was married, and of that union two children were born. However, he had no contact with his wife or children after 1982.
From the time he left school until 1980, defendant's employment consisted of performing "odd jobs." During 1980, he began work as a printer with the St. Joe Paper Co., an occupation he continued until 1982. In that year, defendant commenced employment as a mechanic, but his pursuit of that career was ended after eight *854 months when he was arrested and subsequently incarcerated.
Although the presentence investigation indicates that defendant acknowledged having a juvenile record entailing numerous auto thefts, at the sentencing hearing he denied the correctness of such information. In response, the judge stated that he would accept defendant's protestations of the report's inaccuracy. Further, the trial judge firmly asserted that the juvenile record played no part in the determination of sentence, terming that record inconsequential.
As an adult, defendant possessed a lengthy and sordid criminal record. In 1981, he was convicted in Dallas, Texas of indecency with a child, but a three year sentence was deferred. Approximately a year later in October 1982, he was found guilty of indecent exposure and fined $70. Very shortly thereafter, in January 1983, a life sentence was imposed following defendant's conviction in Dallas of multiple counts of aggravated rape committed late in the previous year. He, of course, was serving that life sentence at the time of his escape to Louisiana, where he committed the instant offenses.
The preceding discussion amply supports the trial court's conclusion that defendant would commit another crime if found eligible for and given a probated sentence. Quite obviously, defendant's armed and unprovoked attack upon a helpless victim threatened, and in fact caused, serious harm. Concerning the two sentences complained of, the record fully justifies the trial court's decision that correctional treatment in a custodial environment is warranted and would cause hardship to no one. Most assuredly, any lesser sentences would deprecate the seriousness of defendant's conduct.
Finally, we observe, as did defendant, that the sentencing judge did not specify whether the sentences are to be served concurrently or consecutively. As a result, the law mandates that they be served concurrently. LSA-C.Cr.P. Art. 883.

Conclusion
For the foregoing reasons, defendant's arguments are rejected, and his convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:89 and LSA-R.S. 14:89.1 state:

§ 89 Crime against nature
A. Crime against nature is:
(1) The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
. . . .
§ 89.1 Aggravated crime against nature
A. Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but such resistance is overcome by force;
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
. . . .
(6) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.
. . . .