522 So.2d 1274 (1988)
STATE of Louisiana
v.
Joe DOSS.
No. 87-KA-352.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1988.
*1276 John Crum, Dist. Atty., George Ann Hayne Graugnard, Asst. Dist. Atty., Edgard, for plaintiff-appellee.
Robert R. Faucheux, Jr., Reserve, for defendant-appellant.
Before GAUDIN, GRISBAUM and WICKER, JJ.
GAUDIN, Judge.
Joe Doss was convicted of aggravated rape (LSA-R.S. 14:42) in the 40th Judicial District Court and sentenced to life imprisonment in the state penitentiary without benefit of parole, probation or suspension of sentence. Doss was then declared to be a habitual offender and sentenced to an additional 24 years at hard labor.
For the following reasons, we affirm Doss' aggravated rape conviction and the appropriate life sentence. However, the record does not indicate that the imposition of the 24 additional years was procedurally proper. We therefore remand for further proceedings, particularly a multiple offender hearing.
THE CRIME
At 12:30 a.m. on March 15, 1986, the victim loaned her automobile to Doss, her uncle. The car keys were on a ring which also included the victim's house keys. Doss left in the car and when he had not returned in an hour, the victim went inside her residence, locked all doors and went to bed.
Several hours later the victim was awakened to find Doss in bed with her, his face scantily covered by underwear belonging to the victim's youngest son, aged five, who was asleep in the same bedroom. Despite this makeshift disguise, the victim immediately recognized appellant.
Doss produced a small knife as the victim removed the underwear from his head.
*1277 A struggle ensued, during which Doss cut, kicked, punched and attempted to choke his niece.
The victim's two older children, both young boys, heard the noise and came into the room and turned the light on. One asked, "What are you doing to my mom?" Doss tossed one boy against the wall, rendering him unconcious. Appellant then punched the other son and cut him on the neck, after which the boy did not move.
Doss then struck and cut the victim again and proceeded to rape her. At one point the victim said to Doss: "Joe, please stop, what will Mamma think if she knew you were doing this to me." Mamma is Doss' grandmother. Appellant, according to the victim, replied: "F___ Mamma, I am getting pussy, not Mamma. I would f___ Mamma, too, if she were here."
The victim was raped two more times and forced to engage in other sexual acts. She was cut further, on the face, neck and breasts. Later, when Doss fell asleep, the victim picked up two of her children and escaped.
Doss was seen running from the rear of the apartment but a police officer captured him two blocks way.
At trial, the victim testified that Doss was wearing a black shirt with gold lettering bearing the name East St. John. The deputy who arrested Doss said that the suspect was wearing a black T-shirt with this inscription in gold letters: "East St. John Mid South Wrestling."

ASSIGNMENTS OF ERROR
On appeal, Doss argues that the trial judge erred:
(1) in denying a defense motion to receive grand jury testimony;
(2) in commenting on the evidence throughout the trial;
(3) in letting the minor children testify;
(4) in not conducting a preliminary meeting in chambers with the victim's children to determine their maturity and understanding;
(5) in permitting hearsay testimony;
(6) in overruling defense counsel's numerous objections to hearsay;
(7) in allowing into evidence the criminal record of a defense witness;
(8) in denying various requests for a mistrial, including one when newspapers published a front page story about Doss' brother John, who was arrested and charged with murder;
(9) in sitting in the jury box next to members of the jury while the trial was in progress;
(10) in permitting the conviction to stand despite insufficient evidence;
(11) in allowing the prosecuting attorney to use vulgar and inflammatory language; and
(12) in refusing to grant a new trial.
Also, Doss requests that we examine the record for errors patent.

ASSIGNMENT NO. 1
In this assignment of error, Doss says it was error for the trial judge to refuse, summarily, a request for grand jury testimony.
LSA-C.Cr.P. art. 729.1(A) provides:
"A motion for discovery shall not be denied without a contradictory hearing unless it appears on the face of the motion that, as a matter of law, the moving party is not entitled to the relief sought."
Doss, in his motion, said only that he was unable to prepare his defense without a grand jury transcript. Grand jury testimony is restricted, however, and not subject to production unless the requesting party alleges a compelling need outweighing the need for secrecy. See State v. Prestridge, 399 So.2d 564 (La. 1981).
Appellant's motion did not establish the requisite need or even come close. It was not error for this request to be denied without a contradictory hearing.

ASSIGNMENT NO. 2
LSA-C.Cr.P. art. 772 states:
"The judge in the presence of the jury shall not comment upon the facts of the *1278 case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
In this assignment of error, Doss specifically refers to the only alleged violation of Art. 772. During the direct examination of Dr. Colin Bailey, a medical witness, this colloquy took place:

"DIRECT EXAMINATION OF DR. COLIN BAILEY BY MR. LEVINSTEIN:
Q. Do you recall whether pubic hair samples were received on that date from the defendant?
A. Yes, I remember.
Q. In your practice, how many times have you been requested by the State or a criminal agency for any type of samples from the defendant in a case?
A. Requested by the State; oh, about a half dozen times since I have been here.
Q. In those half dozen times, what does the State request you to do and what samples are to be taken from the defendant?
A. Usually blood samples and often times the opposite, in rape cases it is different if it might be the victim, but as far as the defendant's, blood samples, pubic hair, and maybe scalp hair.
Q. And that is standard, blood samples, pubic hair and scalp hair?
A. Yes.
Q. Have you ever been requested to take a sperm sample?
A. No.
MR. FAUCHEAUX:
Your Honor, for the record, if the District Attorney's Office or the Sheriff's Office is not doing their job, it is not the requirement of the doctor to tell them what to do.
THE COURT:
Mr. Faucheaux, you are going to final argument again. If you have something to object to, please say I object and give the reason.
MR. FAUCHEAUX:
Your Honor, I object. This is final argument what Mr. Levenstein is asking him about and it is improper.
THE COURT:
Then, Mr. Faucheaux, say I object and give the reason. I have told you that many times in the last three days.
MR. FAUCHEAUX:
Your Honor, I object, on the record, to the Court making comments in the presence of the jury, and I would like to have that on the record.
THE COURT:
I am making comments on the evidence.
MR. FAUCHEAUX:
Your Honor, I requested numerous times to make my statements outside of the presence of the jury.
THE COURT:
You did not this time and not one time did you ask the jury to leave this time."
We assume that the trial judge was accurately quoted, although the word "not" could have been inadvertently omitted from the transcript. The record would then read: "I am not making comments on the evidence."
Regardless, Art. 772 was designed to safeguard the role of the jury as the sole judge of the facts on the issue of innocence or guilt. If a question or comment by the trial judge expresses or implies his opinion as to the defendant's innocence or guilt, the defendant's statutory right has been violated and a reversal is mandated. Moreover, any comment or question by the judge which expresses or implies his opinion regarding a material issue is also reversible. See State v. Williams, 375 So.2d 1379 (La.1979). Art. 772 does not apply to the trial judge's reasons for rulings on objections to the admissibility of evidence, or to explain the purpose for which evidence is offered or admitted, as long as the remarks are not unfair or prejudicial to the defendant. See State v. Knighton, 436 So.2d 1141 (La. 1983), certiorari denied at 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); and *1279 State v. Cathey, 493 So.2d 842 (La.App. 5th Cir.1987), writs denied at 500 So.2d 419 (La.1986). In addition, the trial judge's comments on the evidence are deemed harmless error if they do not imply an opinion as to the defendant's innocence or guilt. See State v. Joseph, 437 So.2d 280 (La.1983).
Despite assertions to the contrary, the trial judge here was neither commenting on Dr. Bailey's testimony or expressing an opinion prejudicial to Doss' assumption of innocence. This assignment of error, therefore, is not supported by the record.

ASSIGNMENTS 3 AND 4
Doss objects to the trial judge's decision allowing the rape victim's two minor sons to testify on these grounds: (1) the trial judge erred in determining that the children (ages eight and six) were competent to testify and (2) the trial judge's voir dire to determine competency, held in the presence of the jury, was improper.
LSA-R.S. 15:469 is as follows:
"Understanding and not age, must determine whether any person tendered as a witness shall be sworn but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn; as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness."
The determination of the trial judge as to the competency of any witness is entitled to great weight because he has the advantage of seeing and hearing the witness. The finding of the trial judge that a child witness is competent is based not only on the child's answers to the questioning which tests his understanding, but also on his overall demeanor on the witness stand. Once a trial judge rules that a child is competent to testify, his ruling will not be disturbed unless the testimony shows that the trial judge manifestly erred. See State v. Arnaud, 412 So.2d 1013 (La.1982).
A key determination to be made is whether the witness is able to understand the difference between truth and falsehoods. Prior to each child's testimony, the trial judge, in open court, asked various questions in which the courtroom was compared to a church. Each child said that he knew the courtroom was a "special room" similar to a church and each promised not to lie on the witness stand.
After carefully examining the record, including the actual trial testimony of each child, it does appear that both children testified truthfully and accurately, substantiating, as far as each was able, the victim's testimony. Neither child demonstrated any significant confusion.
Concerning the trial judge's examination for competency in open court rather than in his office, we note, initially, that defense counsel did not object to this procedure.
Further, while R.S. 15:469 sets forth the test to be used in evaluating a minor's competency, it does not specify any particular method for administering the test. We are unaware of anything in Louisiana criminal law jurisprudence mandating a competency hearing behind closed doors.
Doss cites Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5th Cir.1985), but this is a civil suit involving custody of the minor who was questioned in chambers. The trial judge decided that it would be in the child's best interests to ask certain sensitive questions outside the parents' presence. This decision has no bearing on an aggravated rape proceeding.
Here, we cannot say either that the trial judge erred in finding the victim's children competent to testify or that the in-court questioning was violative of any statute or precedent.

ASSIGNMENTS 5 AND 6
These are the hearsay assignments of error. Doss alleges in his brief:
"The record herein contains so much hearsay testimony as not to be believed. The examples are numerous and rampant. Although expediency was the underlying reason for the rulings, defendant's rights were severely prejudiced. Defendant requests a review of testimony of all State witnesses to determine *1280 whether the trial court acted to jeopardize defendant's right."
This general complaint, however, runs afoul of Rule 2-12.4 of the Uniform Rules of Court, Courts of Appeal, which states:
"The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made."
Three instances of hearsay testimony are specifically referred to by appellant. During the testimony of the police officer who logged the initial complaint, she said that she had been informed that Doss had committed the crime. Another police officer testified that when he went to the hospital to visit the victim, she told him that Doss was the perpetrator.
Although this testimony was heard by the jurors, it was repetitive and in no conceivable way affected the substantial rights of the accused. The victim and several other witnesses had identified Doss as the rightful defendant. See LSA-C.Cr.P. art. 921.
Doss' third allegation of inadmissible hearsay involved the following testimony. A witness was asked about a comment Doss had made to him, to wit:
"Q. What was the statement you heard him say that night?
"A. The guy was putting us out of the place to close at 2:00, and as he was putting us out of the place, Joe Doss was coming down the sidewalk.
"Q. What did he say?
"A. Well, he started cursing and he said he will f___ somebody tonight and he didn't care who it was."
Such an out-of-court statement is allowable to show a person's state of mind. See State v. Martin, 458 So.2d 454 (La.1984), and State v. Weedon, 342 So.2d 642 (La. 1977).

ASSIGNMENT NO. 7
During the trial, both the defendant and his brother Donald testified. Defense counsel questioned both appellant about his criminal background and Donald about his manslaughter conviction.
In this assignment of error, Doss says the trial judge erred in allowing such testimony.
Inasmuch as defense counsel elicited the testimony about prior criminal activity, Doss cannot now complain.
Also, no objection was made regarding this testimony. Appellant cannot, for the first time on appeal, raise this issue. See LSA-C.Cr.P. art. 841, which says:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."

ASSIGNMENT NO. 8
Appellant has another brother, John, who was arrested and charged with shooting and killing his wife while the instant trial was in progress. When several jurors admitted having read of this in a newspaper, Doss moved for a mistrial, which was denied.
The motion was correctly denied. The newspaper story did not inform anyone of any inadmissible evidence concerning appellant. The district judge advised the jury that John Doss had no connection to the defendant then on trial. This admonition was sufficient to cure any prejudice, if any existed.

ASSIGNMENT NO. 9
In this unique assignment of error, Doss contends that he was prejudiced by the trial judge's conduct. In appellant's brief, this argument is made:

*1281 "During the testimony of two witnesses, including a minor, the judge situated himself in different areas of the courtroom in order to observe the witness. At one point in the proceedings, the trial judge took up a seat inside the jury box alongside the regular members of the jury. The judge stayed in the jury box for five to 10 minutes. This incredible sequence of events is highly prejudicial to defendant's right to a fair trial."
Initially, we note that Doss failed to object, as required by LSA-C.Cr.P. art. 841, supra. Further, there was no contention that any interaction occurred between the judge and any juror and there was no showing that the jury was in fact influenced or intimidated by the judge's unusual and unscheduled departures from his chair.
Nonetheless, we cannot and do not condone such judicial behavior. During a trial, especially a serious criminal trial, a judge must remain aloof to avoid any appearance of impropriety.
In State v. Copeland, 419 So.2d 899 (La. 1982), the Supreme Court of Louisiana discussed at length a trial judge's unorthodox behavior. While the Copeland case reversal was not based on the judge's fraternization, it is clear that the Court disapproves of any communication between judge and jury not necessitated by the proceeding itself.
We must add this, perhaps in defense of the Doss trial judge. The failure of the defense attorney to object or move for a mistrial prevented the judge from explaining his actions or from admonishing the jury, if an admonition was called for.
Regardless, in the absence of any interaction between the judge and any juror and in the absence of a showing of prejudice or intimidation, we cannot say that Doss was deprived of a fair trial because the judge didn't always remain seated as a trial judge normally does.

ASSIGNMENT NO. 10
In this assignment of error, Doss relies on Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Carney, 476 So.2d 364 (La.App. 4th Cir. 1985), contending that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not have found him guilty beyond a reasonable doubt of aggravated rape.
Aggravated rape, according to LSA-R.S. 14:42, is a rape committed where the anal or vaginal intercourse is deemed to be without lawful consent because it was committed under one or more of the following circumstances:
(1) When the victim resists to the utmost but whose resistance is ovecome by force,
(2) When the victim is prevented from resisting by threats of great and immediate harm, accompanied by apparent power of execution, and
(3) When the victim is prevented from resisting because the offender is armed with a dangerous weapon.
There are two additional circumstances listed in the statute but they are not pertinent to this case.
In support of his insufficiency of evidence argument, Doss points out that the state produced neither fingerprints nor the weapon allegedly used by him and that the two minor children who testified only saw him striking, not raping, the victim. Appellant mentions other prosecutory flaws, such as the state's failure to produce the underwear Doss supposedly used as a mask.
After borrowing the car, Doss denied returning to the victim's residence and committing the rape, saying that he had abandoned the automobile because it wouldn't start and that he went to a barroom and played cards. He later went to his mother's house where breakfast was being prepared. When he saw police cars, Doss said, he ran from the house to see what was happening. He was then arrested.
The victim's strong and positive testimony about being physically abused and raped by her armed uncle, however, if believed by the jury, could sufficiently establish all necessary elements of this crime. See State v. Falls, 508 So.2d 1021 (La.App. *1282 5th Cir.1987), and State v. Feet, 481 So.2d 667 (La.App. 1st Cir.1985), writs denied at 484 So.2d 668 (La.1986).
In addition to the victim's testimony, there was other evidence against Doss. The young children, one of whom was rendered unconscious and the other told not to look at what was going on, placed Doss at the crime scene hitting the victim.
The victim's mother (Doss's sister) testified that after the rape was committed she saw appellant "... leaving out of the back window." She added:
"I would know Joe Doss anywhere. I know all of my brothers and my sisters anywhere and I tried to catch him. I hollered at him and he jumped the back ditch across the road and went through the pasture and that is the last I saw of him."
Where there is conflicting testimony, the believability of witnesses is a matter within the jury's sound discretion. Credibility calls are not disturbed on appeal unless clearly contrary to the evidence. Here, the record amply supports the finding of guilt.

ASSIGNMENT NO. 11
During the closing arguments of the assistant district attorney, he used language appellant calls "vulgar and inflammatory." It was error, Doss argues, for the trial judge to permit the prosecutor to continually use "... a four-letter expletive which denotes sexual intercourse."[1]
A review of the state's final arguments (initial closing argument and rebuttal) reveals use of the "four-letter expletive" four times but in each instance the prosecuting attorney was quoting Doss, i.e., repeating what witnesses testified Doss had said.
The prosecutor's remarks reflected the testimony and evidence and were within the scope allowed in closing arguments. The remarks were reasonably restrained and confined to material issues and there was no attempt to turn the closing argument into a plebiscite on crime. See State v. Kyles, 513 So.2d 265 (La.1987), and State v. Prestridge, 399 So.2d 564 (La. 1981).
Doss did not object while the assistant district attorney was making his final arguments. LSA-C.Cr.P. art. 841 does apply to statements made during closing arguments. See State v. Cockerham, 442 So.2d 1257 (La.App. 5th Cir.1983).
Considering the very nature of aggravated rape, any discussion of the facts sought to be proved by the state in any case would likely be prejudicial from a defendant's viewpoint. Jurors, however, usually have good sense and are fair-minded, and the final remarks in this case do not seriously suggest that Doss may have been prejudicial or that they (the closing arguments) contributed to the guilty verdict.

ASSIGNMENT NO. 12
The trial judge refused to grant Doss's motion for a new trial. In support of this assignment of error, appellant restates his other assignments of error, which do not warrant reversal.
Finally, we reviewed the record for errors patent. It is clear that the state filed a bill of information charging Doss with being a multiple or habitual offender, but the record does not indicate that a hearing was held prior to the trial judge's imposition of the additional jail time.
Accordingly, we affirm Doss' conviction for aggravated rape and his life sentence without benefit of parole probation or suspension of sentence. We set aside the 24-year term and we remand to the district court for a hearing on Doss' status as a multiple or habitual offender.
CONVICTION AND LIFE SENTENCE AFFIRMED; ADDITIONAL TIME REVERSED; REMANDED FOR MULTIPLE OFFENDER HEARING.
NOTES
[1] From appellant's brief.