582 So.2d 947 (1991)
STATE of Louisiana, Appellee,
v.
John Wesley BEAN, Appellant.
No. 22487-KA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
*949 Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Tommy J. Adkins, Dist. Atty., Stephen K. Hearn Asst. Dist. Atty., Ruston, for appellee.
Before SEXTON, NORRIS, and VICTORY, JJ.
VICTORY, Judge.
Defendant, convicted of second degree murder by a jury and sentenced to life imprisonment, appeals his conviction, assigning twelve errors. We affirm.

FACTS
On April 17, 1989, defendant, John Wesley Bean, known as "Sugar Boy," telephoned his wife, Elgie Palmo Mack, from whom he was physically separated, to tell her he was coming to her home to get some of his personal items. Ms. Mack and four-year-old Cherdaria (her and defendant's daughter) were living with Jessie Mae Anderson, Ms. Mack's aunt.
Upon arriving at the house, defendant spoke to Cherdaria and her seven-year-old cousin, Barbara Peterson, who were playing in the front yard. Ms. Mack and James Smith, known as "Bay Bay," were inside. Defendant entered and asked Smith whether he intended to marry Ms. Mack. Smith responded that he was already married.
Defendant and Ms. Mack left the house in his father's car with the two children in the back seat, and headed down the street to Ms. Mack's car, located on a parking lot about a block away. Peterson testified that she heard defendant say to Ms. Mack several times on the way to the parking lot that he was going to bury her at the funeral home.
Defendant had a .38 caliber semi-automatic pistol in the car with him. Ms. Mack *950 was shot, the passenger door opened and she fell out backwards onto the street. Peterson and Dorothy Mae Johnson, a bystander, said the gun was fired again after Ms. Mack had fallen out of the car. The two children ran from the car and defendant drove away. Ms. Mack died soon afterwards from the gunshot wounds.
Defendant disposed of the gun and fled for about a week, going as far away as Chicago, Illinois, never checking on the extent of his wife's injuries. On April 24, 1989, he turned himself in to police.
On May 9, 1990 a twelve member jury found defendant guilty of second degree murder and he was thereafter sentenced by the trial judge to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

ADMISSIBILITY OF HEARSAY STATEMENTS
Defendant contends the trial judge erred in allowing two hearsay statements, one from police officer John Clary and another from Dorothy Mae Johnson, both of whom testified about what other people had said to them.
Officer Clary testified that while he was controlling the crowd at a house fire, an unidentified black man approached him and said a woman had been shot. Clary followed the man and found Ms. Mack lying in the street.
The trial judge overruled defendant's hearsay objection, but admonished the jury to receive the statement not as evidence of the truth of what was said, but rather to show why the officer took his actions. The ruling of the court was correct.
Under LSA-C.E. 801 C, hearsay is defined as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. Officer Clary's testimony was offered not to prove that someone had in fact been shot, but rather to show why he left the his post and went to the scene where Ms. Mack was lying on the street. Therefore, the judge did not err in his ruling to admit the statement, and he properly admonished the jury. Assuming, arguendo, that the statement was improperly admitted, it was harmless error. The fact that Ms. Mack had been shot was proven by several other witnesses.
Defendant further contends the trial judge erred in allowing Dorothy Mae Johnson to tell the jury statements made to her by four-year-old Cherdaria. Johnson and a neighbor were standing on the porch of the neighbor's house when they observed the defendant and Ms. Mack in a car at a stop sign, with two children in the back seat. Johnson heard two to three shots, saw Ms. Mack come out of the passenger door, land on her back, and then heard another shot. The two children ran to Johnson. She testified that Cherdaria immediately stated to her "Sugar Boy shot my mama," and then asked "why would my daddy kill my mama?"
The trial judge ruled the testimony was not hearsay because it was part of the res gestae under LSA-C.E. Art. 801 D(4), and that it fell within the excited utterance exception to the hearsay rule.
LSA-C.E. Art. 803(2) defines an excited utterance as:
A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
In Morgan v. Foretich, 846 F.2d 941 (4th Cir.1988), defendants argued the statements from a four-year-old child should be excluded because they did not meet the excited utterance exception to the hearsay rule, and also that the child's age made her incompetent to testify. The court disagreed, and held that under the federal excited utterance hearsay exception, which is identical to the Louisiana provision, the declarant must (1) have experienced a startling event or condition and (2) reacted while under the stress or excitement of that event and not from reflection and fabrication. The court held that the test was met, and with respect to the child's incompetency, it stated:

*951 We agree with the majority of courts that have studied this issue and reached the conclusion that "although a child is incompetent to testify, testimony to his spontaneous declarations or res gestae statements is nevertheless admissible."... Likewise, the leading commentators have concluded that "an excited utterance is admissible despite the fact that the declarant was a child and would have been incompetent as a witness for that reason." McCormick on Evidence § 297 at 858 (3d Edition 1984). See also 6 Wigmore on Evidence § 1751 (Chadbourn Rev.1976).
In 6 Wigmore on Evidence § 1751 (Chadbourn Rev.1976), the rhetorical question is posed whether the disqualification of infancy should exclude declarations which are otherwise admissible. The suggested answer is negative because the principle of the exception obviates the usual sources of untrustworthiness in children's testimony.
The general test for determining a witnesses' competency does not include the person who makes an out-of-court declaration which is subsequently admitted into evidence as an exception to the hearsay rule. Competency questions as to such declarants are best determined in their particular contexts. See LSA-C.E. 601 Comment (e).
In State v. Bennett, 549 So.2d 398 (La. App. 4th Cir.1989), writ denied 558 So.2d 1123 (1990), a pre-code case, the court, without discussing the issue of incompetency, allowed a statement into evidence made by a three-year-old child to an eight-yearold child as part of the res gestae, even though the three year old had been ruled incompetent to testify. The court ruled that her statements were "certainly a product of a shocking episode and not a fabrication." The court further commented that the statements were corroborated to a great extent by a neighbor and therefore any prejudice which may have occurred to the defendant was cured.
In the instant case, the statements fall within the excited utterance exception. First, the shooting was an event of a startling nature that would render a four year old's reflective thought processes inoperative. Second, Cherdaria immediately ran to Johnson and made the statements, with virtually no time allowed for fabrication of the statement. The statements therefore fall within the ambit of the hearsay exception and are not barred by the child's incompetency. Thus the trial judge committed no error in allowing this testimony.

INTRODUCTION OF BULLET
Defendant contends the trial court erred in allowing the introduction of a bullet fragment without a proper foundation because it was not shown to be fired from the same gun which killed Ms. Mack or that it had any relationship to the shooting.
Inspector Jay Kavanaugh of the Ruston Police Department, whose job was to photograph the scene of the crime and gather evidence, testified he gathered what appeared to be a bullet fragment located close to blood stains on the pavement near the body. He produced the fragment, depicted in photograph S-1.3, and indicated its location. The trial judge admitted the bullet fragment into evidence over objection.
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. LSA-C.E. Art. 901. Identification may be proven in several ways, including by a witness who identifies it in court. LSA-C.E. 901 B(1), and Comment (d) to Paragraph A. If positive identification is lacking, or if there is a defect in the chain of custody, this goes to the weight of the evidence rather than the admissibility. State v. Harriman, 469 So.2d 298 (La.App.2d Cir. 1985), writ denied, 474 So.2d 1304, cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986).
Inspector Kavanaugh's identification and testimony is evidence sufficient to support the trial judge's finding that the bullet fragment was what the state claimed it to be. This assignment is without merit.

*952 COMPETENCY OF EIGHT-YEAR-OLD WITNESS
Defendant argues the district court erred in finding eight-year-old Barbara Peterson was competent to testify.
Every person of proper understanding is competent to be a witness except as otherwise provided by legislation. LSA-C.E. Art. 601. The question of competency of a person to be a witness is determined by the trial judge. See LSA-C.E. Art. 104 and Comments. The specific rules previously used for determining competency of witnesses under the age of twelve were abandoned with the adoption of the Code of Evidence. See LSA-C.E. Art. 601 Comment (d).
Therefore understanding, rather than age, is the test of competency for any witness, and great weight is given a trial judge's determination of competency because of his opportunity to see and hear the witness. His determination of competency should not be overturned absent manifest error. See LSA-C.E. Art. 601 Comment (b) and pre-code cases of State v. Foy, 439 So.2d 433 (La.1983), and State v. Arnaud, 412 So.2d 1013 (La.1982).
At the competency hearing, Peterson first appeared scared and shy, but testified that she understood the difference between the truth and a lie, and seemed to have the intelligence that one of a similar age would possess. After reviewing the lengthy question-answer session posed to the child on the issue of competency, we cannot say the trial judge abused his discretion in ruling that she was competent.
Defendant further contends Peterson was "coached", and was therefore incompetent. At the competency hearing, Peterson's great-grandmother attempted to help her answer some questions. The greatgrandmother was removed by the court upon discovery of her actions and was not present in court during the child's testimony before the jury. The great-grandmother's actions had no substantial bearing on whether Peterson was of a proper understanding to be competent as a witness.
Likewise, Peterson's earlier statements to authorities, which appear to contradict some of her statements at trial, have little bearing on her competency, but rather go to her credibility, which is a jury question. This assignment of error is without merit.

REFUSAL TO ALLOW TESTIMONY OF VICTIM'S GUN
In the next assignment of error, defendant contends the trial court erred in refusing to allow Barbara Peterson, Helen Martin and Lisa Martin to testify that Ms. Mack normally carried a gun in her purse. Defendant contends he pled self-defense and that under LSA-C.E. Art. 404 A(2)(a), he should have been allowed to present the evidence.[1]
Under LSA-C.E. Art. 404 A(2)(a), evidence of the victim's dangerous character is generally not admissible to prove a person acted in conformity therewith on a particular occasion in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, except:
... when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence ...
*953 However, defendant testified he and Ms. Mack had an argument in the car, and the gun he brought with him fell to the floor board. He said he and Ms. Mack grabbed for it at the same time, and in the struggle, the gun accidentally fired repeatedly. Defendant never indicated he deliberately shot Ms. Mack to defend himself because he believed she was carrying her gun. Thus, whether Ms Mack customarily carried a gun is irrelevant and inadmissible. LSA-C.E. Arts. 401 and 402. These assignments of error are therefore without merit.

OUT-OF-COURT STATEMENTS MADE IN JURY'S PRESENCE
Defendant argues the trial judge erred in refusing to grant a mistrial when Barbara Peterson and Jessie Mae Anderson, great-grandmother of Peterson, spoke in the presence of jurors during a noon recess.
Julie Nelson, a bystander, testified that Peterson came up to her and began talking about the case. As defendant walked through the area, Nelson said Peterson told her "that the man that just walked in the courtroom had shot her auntie and she was there," and "that he had shot her four times." Nelson noticed people, who she thought were jurors, standing in the area and was sure they had heard Peterson.
Defendant's mother, Othalia Bean, testified she heard Peterson say in the jurors' presence that defendant shot the victim four times in the stomach. Ms. Bean recognized the jurors.
Jessie Mae Anderson testified she spoke with a man, whom she did not know was a juror. The man asked her, "Do you live at Lisbon?" Anderson answered, "I live in Ruston." Anderson said nothing else, but did see Peterson talking with someone and tried to get her to be quiet.
A mistrial shall be ordered where prejudicial conduct inside or outside the courtroom makes it impossible to obtain a fair trial. LSA-C.Cr.P. Art. 775. It is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. The determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. Smith, 430 So.2d 31 (La.1983); State v. Brown, 557 So.2d 1085 (La.App.2d Cir. 1990). If an admonition is sufficient to preserve defendant's right to a fair trial, a mistrial is not warranted. LSA-C.Cr.P. Art. 771. Where prejudicial remarks are made before the jury, the trial judge may use his discretion to admonish the jury to disregard the remarks rather than grant a mistrial. State v. Burdgess, 434 So.2d 1062 (La.1983).
The trial judge refused to grant a mistrial, but admonished the jury as follows:
[Y]ou are to completely disregard any statements by any person made about this case that happens to be overheard by you. You are to consider only what is testified to under oath from this witness stand by the witnesses and also the exhibits that are presented to you. That is the only evidence that you are to consider, that and stipulations or agreements between the counsel, but you're to completely disregard anything that was said andand let that have no effect whatever on your verdict in this case. Is that understood by everybody? Do ya'll agree that you will follow that instruction?
The statement made by Jessie Mae Anderson was not prejudicial in any way. Peterson's alleged statements were given at trial, so there was no harmful effect to the defendant. Therefore, the trial judge did not abuse his discretion in denying the mistrial. This assignment of error is without merit.

REFUSAL TO GIVE JURY INSTRUCTIONS
Defendant next argues the trial court erred in failing to give defendant's special charges 7A and 7B to the jury.
These special handwritten instructions read: 7A"Negligent homicide is the killing of a human being by criminal negligence. LSA-R.S. 14:32," 7B"Give instruction on aggravated battery." Defendant argues these should have been read to *954 the jury because they are lesser included offenses to the crime of manslaughter, although not responsive verdicts to the crime charged, second degree murder.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection is made before the jury retires or when such time as the court may reasonably cure the error. LSA-C.Cr.P. Art. 801; State v. Ruple, 437 So.2d 873 (La.App.2d Cir.1983).
Defendant filed his requested jury instructions containing charges 7A and 7B, but the judge's written instructions, filed into evidence, do not contain them. However, there is no transcript of the proceedings showing that the trial judge actually gave or refused to give these instructions or that defense counsel objected to the failure to include these instructions. Only that which is in the record may be reviewed by the court. State v. Oubichon, 422 So.2d 1140 (La.1982). In State v. Booth, 448 So.2d 1363 (La.App. 2d Cir.1984), we held that an assignment of error with respect to a denied special jury charge was not perfected for review when there was not a transcript of the actual jury charges given.
Defense counsel at sentencing asked for an appeal and wanted the state to stipulate that such charges were not given to avoid transcribing the jury instructions. The record does not show the state agreed to the request.
Assuming, arguendo, 7A and 7B were not read to the jury, defendant's argument is without merit. The law states special written jury charges shall be given if they do not require qualification, limitation, or explanation, and if they are wholly correct and pertinent. LSA-C.Cr.P. Art. 807; State v. Marse, 365 So.2d 1319 (La.1978). The refusal to give a special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. Art. 921; State v. Marse, supra.
LSA-C.Cr.P. Art. 814 A(3), which lists the responsive verdicts to second degree murder, does not list negligent homicide or aggravated battery. Therefore, neither of the requested instructions were required to be given as responsive verdicts.
In State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984), writ denied 446 So.2d 315, the defendant, charged with second degree murder, asked for special jury instructions to define negligent homicide, criminal negligence and a statement to the effect that negligent homicide is not a responsive verdict to second degree murder. The charges were not given. We affirmed, stating the trial judge properly gave the responsive verdicts to second degree murder, and adequately explained that if the jury did not find defendant guilty of any of the charged offenses, it was their duty to return a verdict of not guilty.
In the instant case, the trial judge fully explained that the jury could find defendant guilty of second degree murder, or manslaughter. He instructed the jury that if the state did not prove that defendant committed either of these crimes, their verdict was to be not guilty. Therefore, the trial judge's statements were adequate to insure the jury's proper understanding of the offense charged, and all responsive verdicts.
Further, the requested instructions require explanation from the trial judge. Instruction 7A: "Negligent homicide is the killing of a human being by criminal negligence. LSA-R.S. 14:32," is incomplete and would require explanation, such as a definition of criminal negligence, before being given to the jury. Instruction 7B to "Give instruction on aggravated battery" is not a special charge, but merely a request for the trial judge to prepare one. We find both 7A and 7B fail to meet the requirements of LSA-C.Cr.P. Art. 807.
For all of these reasons, this assignment of error is meritless.

DENIAL OF ACQUITTAL AND NEW TRIAL
Finally, defendant contends the trial court erred in denying his motions for a post verdict judgment of acquittal and a new trial. In both motions, defendant contends *955 the verdict is contrary to the law and/or evidence.
A post verdict judgment of acquittal shall be granted only if the court finds the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. LSA-C.Cr.P. Art. 821. The court must find the evidence is sufficient for a rational juror to conclude the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988). A motion for a new trial shall be granted whenever the verdict is contrary to the law and evidence. LSA-C.Cr.P. Art. 851.
Defendant contends the evidence was insufficient for the jury to find he had the specific intent required for second degree murder because he claimed the pistol fired accidentally.
Viewed in a light most favorable to the state, the evidence shows that defendant telephoned his estranged wife and she told him there was a possibility James Smith would be with her. On arrival at Ms. Mack's residence, defendant asked Smith whether he was going to marry Ms. Mack, indicating defendant thought something was going on between his wife and Smith. Defendant, according to his own testimony, told Smith if they loved each other, they could have each other. On cross-examination, defendant admitted he was a little upset that Smith was visiting Ms. Mack.
Eight-year-old Barbara Peterson testified she saw defendant get in the car, unwrap a gun and then force Ms. Mack into the car using the gun, but did not see Ms. Mack with a gun. She testified defendant hit Ms. Mack with the gun and Ms. Mack asked him numerous times to stop. Peterson testified "he was fighting with his gun and she wastrying to get out." Peterson also stated defendant shot Ms. Mack twice inside the car, then pushed her outside of the car and shot her two more times.
Dorothy Mae Johnson testified she was standing on the porch of a neighbor's house, on the driver's side of the car, when she saw the car stop at the stop sign. Johnson heard two to three shots fired in the car and saw Ms. Mack come out of the car and land on her back, before hearing another shot.
Dr. George McCormick, coroner, performed an autopsy and testified Ms. Mack had three gunshot wounds: one to the right side of her face; one to the left breast at close range; and one to the fleshy part of the right upper arm. She also had a substantial tear of the skin behind her right ear, consistent with a blunt instrument, such as a pistol, according to the coroner.
Defendant testified the gun fired automatically, one shot immediately after another. However, the shot wounds were located in different areas of the body, not just in one area as they might be if they were made immediately one after the other. Both Barbara Peterson and Dorothy Johnson testified that after Ms. Mack was outside the car, at least one shot was fired, indicating a time lapse between shots.
Defendant fled and disposed of the gun because he was scared. Flight and attempt to avoid apprehension indicates consciousness of guilt and therefore, is one of the circumstances from which the jury may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982).
Viewed in a light most favorable to the prosecution, the evidence was clearly sufficient for the jury to reasonably conclude that the defendant had the specific intent to kill or inflict great bodily harm on Ms. Mack, and the shooting was not accidental or in self-defense. The trial court was correct in denying the motions for a new trial and post verdict judgment of acquittal.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that the defense did question three witnesses, without objection, about whether the victim carried a gun. Barbara Peterson answered that Ms. Mack owned a gun although she did not have it on the day in question. James Smith stated he did not know whether Ms. Mack carried a gun in her purse. Helen Martin, defendant's relative, responded that within one month of the victim's death, she had seen her pull a gun on defendant. Martin was also asked whether Ms. Mack usually carried a gun with her. The prosecution objected to the question but the jury still heard Martin's response that Ms. Mack did carry a gun. The trial judge sustained the objection and admonished the jury to disregard her answer.