647 So.2d 428 (1994)
STATE of Louisiana, Appellee,
v.
Melvin L. ALLEN, Appellant.
No. 26,547-KA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
*430 Indigent Defender Office by John M. Lawrence, Pamela G. Smart, Alan J. Golden, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Theresa H. Bloomfield, Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Melvin L. Allen, was originally charged with three counts of aggravated rape of his seven-year-old daughter, in violation of LSA-R.S. 14:42. After a jury trial, he was convicted of three counts of sexual battery. The trial court sentenced him to 15 years at hard labor on each count, to be served concurrently. The defendant appealed his convictions and sentences. For the reasons assigned below, we affirm.

FACTS
In the late summer of 1992, the defendant, a former police officer, was residing with his parents in Shreveport. He was divorced from the mother of his seven-year-old daughter (hereinafter referred to as "the victim"). Over the Labor Day weekend, the victim, her five-year-old sister, and their 11-year-old half-brother stayed with the defendant and his parents.[1] At night, the three children slept in the defendant's bedroom in the same bed as the defendant. According to the trial testimony of the victim, on three occasions that weekend, the defendant woke her up, removed her underwear, and penetrated her vagina with his penis. The other children did not wake up during these incidents, and the defendant told the victim not to tell anyone what he had done to her.
*431 About a week later, the victim's mother noticed a foul odor and a discharge on the victim's underwear. She had the defendant pick up the children and take them to the office of Dr. Edwidg Eugene. The mother met them there, and both parents were present while the doctor examined the victim. In the course of his examination, Dr. Eugene determined that the victim's vagina was abnormally enlarged for her age, and he suspected sexual abuse. When he asked the victim if any older boys had "messed" with her, the child became upset. At the request of the mother, the defendant and the doctor stepped outside and left her alone with the victim momentarily. The child told her mother that the defendant was the one who had "messed" with her. When the doctor returned to the examining room, the mother asked the victim to repeat this statement. After the child told him that her father was the person who molested her, Dr. Eugene recommended that she be taken to the LSU Medical Center for further examination. Additionally, the police were contacted.
The next day the victim was examined by Dr. Patricia Denley Turnage, a pediatrician. She determined that the victim's hymeneal opening was about 30% larger than normal for a child her age. Although Dr. Turnage noted no tears, abrasions or lesions, she testified that this was not uncommon when a child is molested by a family member because the offender will be careful not to hurt the child in order to have continued access to the child and to avoid detection. Dr. Turnage saw the victim a second time one week later, at which time she interviewed the child alone and learned details of the molestation incidents.
The defendant was indicted on three counts of aggravated rape. Prior to trial, the state filed notice of its intent to use evidence of other crimes, specifically, incidents involving the defendant's 10-year-old sister-in-law and his 10-year-old niece by marriage that resulted in his 1990 convictions on two counts of indecent behavior with a juvenile. Following a Prieur hearing, the trial court ruled that these incidents of abuse would be admissible. The defendant applied to this court for supervisory review of this ruling. However, the writ was denied on the grounds that the ruling would be reviewable on appeal in the event of conviction.
The defendant filed motions seeking psychiatric or psychological evaluations of the victim in the present case, as well as the sister-in-law and niece who were the victims of the defendant's prior offenses. He also requested a separate hearing to determine the competency of these three young witnesses. The trial court denied the motions.
Jury trial was held in October 1993. The state presented the testimony of the victim (then age 8), her mother, her half-brother, the two physicians who examined the victim, and the investigating police officer. Also testifying were the two young girls whom the defendant had previously molested in separate incidents in November 1988 when both girls were only 10 years old. The defendant's 14-year-old former sister-in-law (the aunt of the victim in the present case) testified that, on two different occasions when she spent the night at the home of her sister and the defendant, she was awakened by the defendant who removed her underwear, had sexual intercourse with her, and told her not to tell anyone. The 15-year-old niece of the defendant's former wife (the cousin of the victim in the present case) testified that she spent the night at the home of her aunt and the defendant in November 1988. The defendant entered the bedroom where she was sleeping with one of her cousins, picked her up, put her on the floor, removed her underwear, and engaged in sexual intercourse with her.
The defendant offered the testimony of his 10-year-old nephew. The boy testified that he was one of 15 people staying at the home of the defendant's parents on the Labor Day weekend of 1992. He testified that he was sleeping in another bedroom with nine other children when he heard the victim scream. He got up and went to the bedroom where the victim and her siblings were sleeping. He testified that, through a crack in the door, he watched the victim and her 11-year-old half-brother having sexual intercourse.
In rebuttal, the state recalled the victim's half-brother who denied ever having sexual intercourse with the victim or touching her in *432 any inappropriate way. Thereafter, the defense sought to recall the defendant's nephew as a surrebuttal witness, but the trial court denied the request.
The jury convicted the defendant of three counts of sexual battery, a responsive verdict to the original charge of aggravated rape. The defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal. The trial court denied the motions.
On the basis of his two prior convictions, the defendant was adjudicated a second felony offender under LSA-R.S. 15:529.1, which provided for a minimum sentence of at least five years for the offense of sexual battery. The trial court determined that the defendant fell in Grid 4(C) of the Louisiana Sentencing Guidelines, which had a designated range of 54 months to 72 months. However, the trial court found that there were aggravating factors justifying an upward departure from the guidelines. Therefore, the defendant was sentenced to 15 years at hard labor on each of the three counts of sexual battery, to be served concurrently. The defendant's motion to reconsider his sentences was denied.
The defendant appealed. He filed numerous assignments of error. He also requested that we inspect the record for any errors patent on its face.

MOTIONS PERTAINING TO TESTIMONY OF CHILD WITNESSES
The defendant filed two motions pertaining to the state's child witnesses. The first motion sought to compel psychiatric or psychological evaluation of the victim and the two young girls previously molested by the defendant by defense experts to examine their mental competence to testify. The second motion requested a separate hearing at which the competency of these witnesses would be determined. The trial court denied both motions, finding that the competency of the witnesses was a matter to be determined by the court, not a psychiatrist. The trial court further held that the competency of a young child witness would be determined at trial after examination by the court.[2]
The defendant contends in his first two assignments of error that the trial court erred in denying these motions. He argues that, since the defendant and the victim's mother were divorced at the time of the offenses and the mother was momentarily left alone with the child immediately prior to her accusation against the defendant, there was a possibility of undue influence upon the child by "disgruntled relatives." Thus, he should have been able to have her examined by his own independent psychiatrist. In support of his argument, the defendant cites LSA-C.Cr.P. Art. 718, which requires the trial court to authorize the defendant to examine tangible items if favorable to the defendant and material and relevant to the issue of guilt.
However, the Articles of the Code of Criminal Procedure pertaining to discovery in criminal cases do not permit pretrial examination of the state's witnesses. State v. Harris, 367 So.2d 322 (La.1979). Furthermore, in State v. Edwards, 419 So.2d 881 (La.1982), the Supreme Court upheld the trial court's refusal to compel a psychological examination of a six-year-old witness to two murders. In State v. Garay, 453 So.2d 1003 (La.App. 4th Cir.1984), the trial court's refusal of the defense's request for independent psychiatric examination of a five-year-old victim was likewise upheld. In so ruling, both courts referred to the great deference accorded to the trial court's observation of the child witness. The court in Garay, supra, emphasized the defendant's right to cross-examine the child and thus adequately test her recollections.
As to the defendant's speculation that the victim might have been "coached" by her mother, we note the ruling in State v. Bean, 582 So.2d 947 (La.App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991). The defendant in that case contended that an eight-year-old witness was incompetent to testify *433 because she was "coached." A relative attempted to help the child answer some questions at the competency hearing but was not present during the child's testimony before the jury. The appellate court found that the relative's actions "had no substantial bearing on whether [the child] was of a proper understanding to be competent as a witness."
The defendant argues that a separate competency hearing should have been held in advance of trial because evidence of any influence by relatives "could" have been more readily determined by "possibly" placing the child in more comfortable surroundings. However, there is no requirement in the law that a separate hearing be held in advance of trial. See and compare State v. Doss, 522 So.2d 1274 (La.App. 5th Cir.1988), writ denied, 530 So.2d 563 (La.1988).
We find no error in the trial court's rulings. The defendant was not entitled to demand psychiatric evaluation of the child witness/victim in the present case. As will be discussed more fully in the next assignment of error, the law provides that it is the trial judge, not a psychiatrist, who determines the competency of a child witness. Nor was there any legal basis to support his demand for a separate competency hearing in advance of trial.
These assignments of error are meritless.

COMPETENCY OF CHILD WITNESS
The defendant also contends that the trial court erred in finding that the victim, who was seven years old at the time of the offenses and eight years old at the time of trial, was a competent witness. To the contrary, the defendant argues that her overall answers to the trial court's questions showed that she did not have sufficient understanding to be a witness.
Outside the presence of the jury, the trial court questioned the victim as to her age, birthday, school attendance, grades and subjects, and church attendance. She answered all of these questions without difficulty. The victim was unresponsive when asked if she knew what it meant to tell the truth. She also responded "no" when asked if she knew what it meant to tell a lie. Further, when asked if she understood the consequences of telling a lie, the victim stated "no." However, she indicated that she knew when something was not true such as if someone were to tell her that the white ceiling was black or that the sun was shining when it was raining. When asked if one of the judge's children would be punished for telling him something not true, the victim responded "yes." She also stated that children who get in trouble at school get detention sometimes. The judge found the victim "apparently very bright" and stated that she knew when something was not true.
LSA-C.E. Art. 601 provides as follows: "Every person of proper understanding is competent to be a witness except as otherwise provided by legislation." The question of competency of a person to be a witness is determined by the trial judge. See LSA-C.E. Art. 104.
Proper understanding, rather than age, is the test of competency for any witness. State v. Bean, supra; State v. Bennett, 591 So.2d 1193 (La.App. 1st Cir.1991), writ denied, 594 So.2d 1315 (La.1992); State v. Crandell, 604 So.2d 123 (La.App. 2d Cir. 1992). The determination by the trial court that a child is competent to testify as a witness is based not only upon the child's answers to questions testing his understanding, but also upon the child's overall demeanor on the witness stand. Bennett, supra.
Great weight is given a trial judge's determination of competency because of his opportunity to see and hear the witness. His determination of competency should not be overturned absent manifest error. Bean, supra; Crandell, supra.
A child's sometimes hesitant or unresponsive answers do not necessarily indicate incompetency. Instead, they may be part of an overall demeanor in the unfamiliar courtroom experience which favorably reflects testimony only as to what is clear to the child. See State v. Foy, 439 So.2d 433 (La.1983). As in the present case, Foy contended that an eight-year-old witness was not competent to testify because she lacked sufficient understanding regarding the sincerity of an oath *434 and possible punishment for lying. After reviewing the child's testimony, the supreme court stated that "the child possessed sufficient understanding of the trial, the questions, the difference between truth and lies, and her ability to recall the events about which she testified." Foy, supra, at 435.
See also State v. Sharp, 338 So.2d 654 (La.1976), in which the defendant asserted that the murder victim's eight-year-old son was not competent to testify. The supreme court stated that, reviewing the child's testimony in its entirety, it was clear that he had sufficient understanding to be a witness. Although the witness had stated that he did not know what an oath was or what would happen if he told a lie, "it was evident that he was simply unfamiliar with the courtroom experience." Sharp, supra, at 661.
In the present case, our review of the victim's testimony, as a whole, demonstrates that she had sufficient understanding to be deemed a competent witness. Although she had difficulty with abstract questions about telling the truth and lying, the victim was able to understand more specific questions applying these concepts. Additionally, the courtroom experience was apparently somewhat stressful for this young child, as reflected by the prosecutor's suggestion during direct examination that she take several breaths to calm down. The trial court, which had the benefit of personally observing the child's demeanor, properly concluded that she was a competent witness.
This assignment of error has no merit.

OTHER CRIMES EVIDENCE
In this assignment of error, the defendant contends that the trial court erred in allowing the state to present other crimes evidence, i.e., the testimony of the two young female relatives who had been molested by the defendant under circumstances similar to those in the present case. He contends that the use of this evidence eroded his presumption of innocence and produced a prejudicial effect which outweighed any probative value. However, the state contends that the evidence of these prior crimes is admissible to show intent, system, knowledge, motive and lack of mistake or accident under LSA-C.E. Art. 404(B)(1).
Generally, evidence of other acts of misconduct is not admissible; however, there are statutory and jurisprudential exceptions to this rule. State v. Jackson, 625 So.2d 146 (La.1993). Evidence of other acts is allowed to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. Art. 404(B)(1).
Under State v. Prieur, 277 So.2d 126 (La.1973), a pretrial hearing must be held at which the state is required to: (1) show the evidence serves the actual purpose for which it is offered and (2) prove by clear and convincing evidence this defendant committed the other crimes. LSA-C.E. Art. 1103; State v. Tolliver, 621 So.2d 17 (La.App. 2d Cir.1993).
Despite the admissibility of the evidence under LSA-C.E. Art. 404(B)(1), the state must still establish that the probative value of the other crimes evidence outweighs its prejudicial effect. Jackson, supra.
Generally, evidence of other sex crimes committed by the accused against the same victim or a similarly situated victim falls into one of the LSA-C.E. Art. 404(B) exceptions. Tolliver, supra. For similar factual situations wherein prior sex crimes against other family members were found to be admissible, see also Jackson, supra; State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989); and State v. Howard, 520 So.2d 1150 (La.App. 3d Cir.1987), writ denied, 526 So.2d 790 (La. 1988).
At a pretrial Prieur hearing, the trial court in the present case held that the evidence of other crimes was admissible. At trial, the defendant's sister-in-law and niece (like the victim) each testified that, while she was spending the night at the defendant's home, the defendant woke her up and forced her to have sexual intercourse with him, even though other persons were present in the home and in close proximity. These two girls and the victim were related to the defendant *435 and of similar ages. This evidence had independent relevancy and was admissible to show the defendant's "lustful disposition" toward young female relatives and his motivation by an unnatural interest in pre-pubescent females.
Although the evidence of these prior crimes was undoubtedly prejudicial, we find that its probative value outweighed any prejudice. The sister-in-law and niece testified in sufficient detail to allow the defendant to refute the charges, and the 1988 incidents were not remote in time to the present offense in 1992. Also, since this was an intrafamilial situation, the defendant was well acquainted with the persons accusing him, and he was able to point out any issues of family hostility or bias.
This assignment of error is without merit.

MOTIONS FOR POST-VERDICT JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL
The defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal and his motion for new trial. Both motions argued that the evidence presented by the prosecution was insufficient to support his convictions for sexual battery.
A motion for new trial shall be granted by the court if the verdict is contrary to the law and the evidence. LSA-C.Cr.P. Art. 851. A motion for a post-verdict judgment of acquittal shall be granted by the court only if it finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. LSA-C.Cr.P. Art. 821.
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The elements of the offense of sexual battery are set forth in LSA-R.S. 14:43.1 as follows:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
The defendant bases his argument of insufficient evidence on three grounds: a lack of corroborating medical evidence; the presence of inconsistencies in the victim's testimony; and the existence of conflicting evidence by the defendant's young nephew.
On the first issue, the defendant argues that since Dr. Turnage did not observe the usual signs of child sexual abuse such as tears, abrasions or lesions during the genital examination of the victim, there was no conclusive, corroborating medical evidence to support his convictions of sexual battery. However, Dr. Turnage also testified that it was not unusual for those signs of brute physical force to be absent when the molester was a member of the child's family. Such an offender would exercise great care not to harm the child in order to have continued access to the child and to avoid detection. Based upon the history recounted by the victim and the child's enlarged hymeneal opening, Dr. Turnage concluded there was probable sexual molestation.
The defendant's argument pertaining to the inconsistencies in the victim's testimony concern the positions of the two parties during intercourse. In her trial testimony, the victim testified that the defendant placed her on top of him and that he was never on top of her. During her interview with Dr. Turnage, the victim indicated that the defendant was *436 on top of her. However, while stating that the position of the offender would be a simple thing to remember, Dr. Turnage pointed out that there was more than one incident, thus possibly leading to some confusion.
As to the testimony of the defendant's nephew that he saw the victim's older half-brother lying on top of the crying victim, this 10-year-old boy testified that he got up during the night on the Labor Day weekend in question because he heard the victim scream. Although he was sleeping in a bedroom with nine other children, he was apparently the only person in the house awakened. (We also note that the testimony of this young witness was replete with inconsistent and nonsensical answers on a variety of questions which obviously caused the jury to question his testimony in general.)
Whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact; such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Perow, 616 So.2d 1336 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1303 (La. 1993).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984); State v. Perow, supra.
The jury obviously concluded that the victim was molested in some fashion and that the defendant was the person who actually molested her. In so deciding, the jury made its own credibility determinations and resolved conflicting testimony. Based upon this record, we find that the jury's conclusions were reasonable and that the evidence, viewed in the light most favorable to the prosecution, supported the defendant's convictions on three counts of sexual battery.
These assignments of error are without merit.

SENTENCING
In these two assignments of error, the defendant complains that the trial court erred when it made an upward departure from the Louisiana Sentencing Guidelines and denied his motion to reconsider sentence. Specifically, the defendant contends that the aggravating circumstances relied upon by the trial court to justify its upward departure were not present to a significant degree to make the present case more serious than the typical case.
The crime of sexual battery is punishable by imprisonment, with or without hard labor, for not more than ten years. LSA-R.S. 14:43.1. However, the defendant was adjudicated a second-felony offender on the basis of his prior convictions for indecent behavior with a juvenile. Under LSA-R.S. 15:529.1(A)(1), a second-felony offender shall be sentenced to a term of not less than one-half the longest term and not more than twice the longest term for a first conviction. Thus, under the habitual offender statute, the defendant faced a sentence of between five and 20 years on each count of sexual battery.
Before imposing sentence, the trial court noted that the defendant fell into Grid cell 4(C) of the Louisiana Sentencing Guidelines, which provided for a minimum term of 54 months and a maximum term of 72 months.[3] However, the court then found that several aggravating circumstances justified an upward departure from the recommended sentencing range. These factors were: (1) the victim was a young child, who was particularly vulnerable because of her age; (2) the defendant used his status as her father to facilitate the offenses; and (3) there were *437 three separate counts of molestation in this series of offenses and the defendant also had two counts in his prior convictions. The trial court found that a sentence of 15 years at hard labor per count was appropriate and ordered that the sentences be served concurrently.
While a trial judge must consider the Louisiana Sentencing Guidelines, he has complete discretion to reject the guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which the defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, LSA-C.Cr.P. Art. 894.1. Also, where the trial judge has considered the guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the guidelines. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237.
A sentence violates La. Const. Art. 1, Sec. 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
In the present case, the trial court considered the guidelines and found that there were aggravating circumstances which justified an upward departure from the recommended sentencing range. The sentences, which the trial court imposed in light of those aggravating circumstances, do not shock the sense of justice, particularly in view of the defendant's repeated offenses against and unnatural sexual interest in young female relatives.
These assignments of error are meritless.

ERROR PATENT
Additionally, we have reviewed the record for error patent and found none.

CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Although the younger sister was also the biological child of the defendant, the testimony of the victim's mother established that the brother was not his son.
[2] Although these motions in the trial court concerned all three of the young female witnesses, in his appellate brief the defendant complains of the rulings on the motions only insofar as they applied to the victim of the instant offenses.
[3] In calculating this grid cell determination, the trial court gave the defendant two points due to his prior convictions for indecent behavior with a juvenile, both of which offenses he pled guilty to on the same day. La.S.G. § 205(C)(3)(f), § 402A, and § 402D. Additionally, the defendant received one point because the present offenses occurred while he was on parole for his prior convictions and one-half point because the prior offenses were in the same "crime family" as the present ones. La.S.G. § 205(C)(3)(c) & (d).